# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 29, 2013

## STATE OF TENNESSEE v. DAVID EDMOND ROGERS

**Appeal from the Criminal Court for Hamilton County**
**No. 279539     Rebecca J. Stern, Judge**

---

**No. E2012-01138-CCA-R3-CD - Filed February 13, 2013**

---

The defendant, David Edmond Rogers, was convicted by a Hamilton County jury of aggravated burglary, a Class C felony, and theft over $500, a Class E felony, and was sentenced by the trial court as a career offender to fifteen years at sixty percent for the aggravated burglary conviction and six years at sixty percent for the theft conviction, with the sentences to be served consecutively to his sentences for prior Georgia convictions. On appeal, the defendant argues that the trial court erred in denying his motion to suppress evidence obtained as a result of his traffic stop and that the evidence is insufficient to sustain his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Amanda B. Dunn, Chattanooga, Tennessee (on appeal); Blake F. Murchison and Steve Brown, Assistant Public Defenders (at trial), for the appellant, David Edmond Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, III, District Attorney General; and Charles D. Minor and Leslie A. Longshore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

This case arises out of the theft of a television set, two Xbox systems, a Blu-Ray player, and a container of change from the home of Wesley Rhodes. On the afternoon of March 28, 2010, the victim's uncle, Brian Rhodes, arrived at his mother's home on Julian

Road in Hamilton County and observed an unfamiliar man sitting in the passenger seat of a green Chevrolet/GMC pickup truck that was parked in the driveway of the adjacent house, which his mother rented to his two nephews. As Rhodes watched, he saw another unfamiliar man carry a flat screen television from his nephews' home, place it in the bed of the truck, and then get into the truck and start driving south on Julian Road. Rhodes called 911 to report the burglary and followed behind the truck for as long as he was able to keep up. A short time later, Georgia law enforcement officers stopped and arrested the defendant and his passenger, who were traveling in a green pickup truck with the victim's television set and other belongings in the back. The defendant was subsequently indicted for aggravated burglary and theft over $500 and tried before a Hamilton County jury.

### Suppression Hearing

The defendant filed a pretrial motion to suppress the evidence recovered from his pickup truck on the basis that the officers lacked reasonable suspicion for the traffic stop. At the suppression hearing, Detective William Roach of the Catoosa County, Georgia, Sheriff's Department testified that he was in downtown Ringgold when the original 911 call came in about the burglary, which, he said, described the suspect vehicle as a green, older model GMC or Chevrolet pickup truck with a ladder in the back. He stated that the 911 dispatcher reported that the victim had lost contact with the suspect vehicle on Swanson Road. He testified that Swanson Road leads into Ooltewah/Ringgold Road and that he was traveling northbound on Ooltewah/Ringgold Road in response to the burglary when he saw a dark-colored, older model GMC or Chevrolet pickup truck traveling in the southbound lane with two individuals inside and a ladder in the back. It was raining heavily at the time, and the pickup truck passed two other vehicles and continued at a high rate of speed toward Ringgold. He radioed his fellow officers in Ringgold to advise them to be on the lookout for the vehicle and drove on to the burglary location.

At this point during the suppression hearing, the State apparently played a tape recording of the 911 call by Brian Rhodes and the radio communication amongst the law enforcement officers and the dispatcher following that call. The record before this court, however, contains only a CD of the actual 911 call.

On cross-examination, Detective Roach acknowledged that the description he provided of the vehicle to his fellow officers included information about the ladder in the back of the truck. He said he did not know whether Brian Rhodes mentioned the ladder in his 911 call.

Deputy Jason Sullivan of the Catoosa County Sheriff's Department testified that he was traveling on Lafayette Street en route to Ooltewah/Ringgold Road in response to the

"BOLO" or "be on the lookout for" the suspect vehicle when a vehicle headed in the opposite direction passed that matched the description given of an older model green Chevrolet or GMC pickup truck with two subjects and a ladder in the back. As the vehicle passed, he was able to see that it contained two males, and he relayed that information over the radio as he began to make a turn. The vehicle appeared to increase its speed as he started his turn and by the time he had turned his vehicle all the way around, it was already turning onto Spark Street, which was three streets from the intersection where he made his turn. He accelerated, caught up, activated his lights, and stopped the vehicle. After waiting for a backup officer to arrive, he made contact with the defendant, who was the driver, and his passenger. Deputy Sullivan testified that as he approached the vehicle after the stop, he was able to see a large flat screen television lying in the back getting wet from the rain, as well as a large tin and change strewn about the bed of the truck.

On cross-examination, Deputy Sullivan testified that the defendant was not traveling at an excessive rate of speed when he first spotted him but that he began speeding after he started his turn to follow, stating that there was "no way" that the defendant could have reached Spark Street by the time he made his turn by traveling at the posted speed limit of thirty to thirty-five miles per hour. He acknowledged that he did not clock the defendant's vehicle with radar. He explained, however, that he had been on the traffic unit for several years and was skilled at estimating a vehicle's speed.

At the conclusion of the hearing, the trial court overruled the motion to suppress, finding that the circumstances gave the officer reasonable and articulable suspicion for the stop and detention of the defendant.

**Trial**

Brian Rhodes testified that on March 28, 2010, he was bringing lunch to his mother, who lived on Julian Road in East Brainerd approximately a quarter mile from the Georgia state line, when he noticed an unfamiliar pickup truck with a male passenger parked in the driveway of the adjacent house, which his mother rented to his two nephews. His nephews were not home, and he started to call his brother to see if they were expecting any visitors when he saw a man walk out of the kitchen door of the home carrying a flat screen television. The man placed the television in the bed of the truck, got into the truck, reversed out of the driveway, and began driving south on Julian Road.

Rhodes testified that he pursued the two men in his own vehicle, reaching speeds of fifty to sixty miles per hour on a road with a posted speed limit of thirty miles per hour, but he was unable to get close enough to read the truck's license plate and eventually lost the vehicle in traffic at Ooltewah/Ringgold Road. He called 911 on his cell phone during his

pursuit and gave a description of the truck to the Catoosa County, Georgia Sheriff's Department dispatcher who answered his call. A CD of the 911 call was played before the jury and introduced as an exhibit in the case. In the call, Rhodes described the vehicle as an older model green Chevrolet or GMC pickup truck with two men inside. Rhodes identified a photograph of the defendant's truck as appearing to be "very, very similar to the truck" he had seen. He also testified that the truck he saw at his nephews' house had an extension ladder sticking out the back of it like the one in the photograph. On cross-examination, he acknowledged that he was unable to identify the defendant as either the driver or the passenger of the truck.

Deputy Jason Sullivan testified that he was patrolling the county on March 28, 2010, when a vehicle matching the description of the suspect vehicle passed him. The driver appeared to accelerate as he turned his patrol vehicle around to follow, but he increased his speed, caught up, and pulled him over at a business on Highway 41. In the bed of the truck was a large flat screen television, a couple of Xbox systems, a metal container containing a small amount of change, a large amount of loose change strewn around the bed of the truck, a ladder, and some other miscellaneous items, including a tarp. Although it was raining heavily at the time, neither the television nor the video game equipment was covered. Deputy Sullivan made a positive courtroom identification of the defendant as the driver of that truck. He also identified photographs of the defendant and his male passenger taken at the time of their arrest as well as photographs of the truck and its contents.

On cross-examination, Deputy Sullivan acknowledged that the defendant pulled over when he activated his blue lights and was compliant with his instructions following the stop.

Officer Chuck Hewitt of the Ringgold, Georgia Police Department testified that he arrived at the scene of the defendant's arrest immediately after Deputy Sullivan had initiated a stop of the defendant's vehicle, approximately ten to fifteen minutes after the BOLO on the vehicle had been issued. He identified photographs of the vehicle and its contents and testified that he found it strange that the defendant would have the television and Xbox systems getting wet from the rain when there was a tarp in the back of the truck.

Wesley Rhodes testified that on March 28, 2010, his brother left for work early in the morning and he left for his job at about 12:40 p.m., stopping en route at a service station to purchase some gas. While there, he received a telephone call from his father informing him that he had just been robbed. He then drove back home to find that his kitchen door had been kicked in and that his flat screen television, Xbox, Blu-Ray player, and digital antenna were missing from the living room and his brother's Xbox and a bucket of change were missing from his brother's bedroom. The witness identified the previously admitted photographs of the television and an Xbox in the back of the defendant's truck as his. He testified that he

had had the television for approximately a year at the time it was stolen and had paid $500 for it. He said he had had the Xbox for about eight months and paid $300 for it. He testified that he had bought the second Xbox system a couple of years earlier and given it to his brother upon his purchase of the newer system. He stated that his brother and his father recovered the stolen property from the sheriff's department later that same afternoon. Finally, he said that he did not know the defendant and had not given him permission to enter his home and take his property.

Officer Dale Taylor of the Chattanooga Police Department testified that he responded to the reported burglary at approximately 1:56 p.m. on March 28, 2010, and spoke with the victim, Wesley Rhodes. On March 31, he again spoke with the victim, who informed him that he had recovered his stolen property from the Georgia authorities.

Detective William Roach described his sighting of the vehicle on Ooltewah/Ringgold Road and his having radioed other officers to alert them that it was traveling at a high rate of speed into Ringgold. He identified his log of the items that were recovered from the defendant's truck, which were a Magnavox Blu Ray player, an Xbox 360 with a controller, another Xbox 360, an RCA digital receiver antenna, and an RCA flat screen 40-inch television set.

The defendant elected not to testify and rested his case without presenting any evidence. Following deliberations, the jury convicted him of the indicted offenses.

## ANALYSIS

### I. Denial of Motion to Suppress

The defendant first contends that the trial court erred by overruling his motion to suppress the evidence, arguing that the evidence preponderates against the trial court's finding that the officer had reasonable suspicion for the traffic stop of his vehicle. When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S .W.2d 295, 299 (Tenn. 1999); State

v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998) (citations omitted).

One of those exceptions is when an officer makes an investigatory stop based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Ornelas v. United States, 517 U.S. 690, 696 (1996). If an officer observes a violation of a traffic law, the officer has an objective basis for stopping the vehicle. See, e.g., State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Levitt, 73 S.W.3d 159, 173 (Tenn. Crim. App. 2001).

The trial court found that the officer had "reasonable and articulable suspicion" to stop and detain the defendant given his "proximity in time and location" to where the suspect's vehicle had been spotted and the fact that his truck matched the description of the suspect vehicle. The record does not preponderate against these findings. According to Detective Roach, the 911 dispatcher reported that the victim's uncle had lost sight of the vehicle involved in the burglary, an older model green GMC or Chevrolet pickup, around the area of Ooltewah/Ringgold Road. Detective Roach spotted a dark-colored, older model Chevrolet or GMC pickup truck with two individuals inside and a ladder in the back speeding toward Ringgold on that road, and a short time later Deputy Sullivan encountered a vehicle matching that description in Ringgold. When he began to turn his patrol vehicle around to follow, the vehicle accelerated away from him and turned down a side street. These circumstances were more than sufficient to give Deputy Sullivan reasonable suspicion for the stop.

The defendant argues that Deputy Sullivan's stop of his vehicle was based on Detective Roach's "enhanced and altered description" of the vehicle as "dark in color" and with a ladder in the back, both of which were details that were not provided by the victim's uncle in the original 911 call. As such, he argues that the "reasonable, articulable suspicion that allegedly formed the foundation for the stop by Deputy Sullivan was based upon unreliable information." We respectfully disagree. Regardless of whether Detective Roach's description of the vehicle that he saw speeding toward Ringgold on the Ooletah/Ringgold

Road included additional details that were not provided by Brian Rhodes, the fact remains that the defendant was spotted shortly after the burglary traveling in a vehicle that matched the description provided by Rhodes, at an excessive speed, and in the same direction that the fleeing suspect had taken. We conclude, therefore, that the trial court properly overruled the defendant's motion to suppress.

## II. Sufficiency of the Evidence

The defendant also challenges the sufficiency of the evidence in support of his convictions. Specifically, he argues that the State failed to prove beyond a reasonable doubt his identity as one of the burglars, asserting that "[a]ny number of scenarios could have occurred by which [the defendant] took possession of his vehicle after the alleged aggravated burglary and theft of property occurred." The State responds by arguing that the evidence, which included the defendant's unexplained possession of recently stolen property, was sufficient for the jury to find the defendant guilty of the crimes beyond a reasonable doubt. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the aggravated burglary conviction, the State had to prove beyond a reasonable doubt that the defendant entered the victim's home without the effective consent of the victim and with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-401(1), -402(a)(1), -403(a). To sustain the theft over $500 conviction, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the victim of his property, knowingly obtained or exercised control over the property without the victim's consent and that the value of the property was more than $500 but less than $1,000. Tenn. Code Ann. §§ 39-14-103(a), -105(a)(2).

We conclude that the evidence, when viewed in the light most favorable to the State, is more than sufficient to establish the identity of the defendant as one of the perpetrators of the crimes. Although the victim's uncle was unable to identify the defendant as either the driver or the passenger of the pickup truck involved in the burglary, the defendant was arrested a very short time later in a truck that matched Rhodes's description of the suspect vehicle and in a location consistent with the direction that the suspects had taken. Most importantly, the victim's recently stolen belongings were found in the back of the defendant's truck, in a condition that indicated that they had been hurriedly thrown there with no care taken to prevent them from getting damaged by the rain. "Possession of recently stolen goods gives rise to an inference that the possessor has stolen them" and "may also be sufficient evidence to sustain a conviction for burglary." State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995) (citing Bush v. State, 541 S.W.2d 391, 394 (Tenn. 1976), and Brown v. State, 489 S.W.2d 855, 856 (Tenn. Crim. App. 1972)). This evidence was sufficient for the jury to find the defendant guilty of the offenses beyond a reasonable doubt. Accordingly, we affirm the defendant's convictions for aggravated burglary and theft over $500.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial

court.

_____
ALAN E. GLENN, JUDGE